## SHERIDAN v. UNITED STATES.
### Civil Action No. 2301.

District Court, D. New Jersey.
July 11, 1944.

Spingarn & Sachs, by Samuel Spingarn, both of Union City, N. J., for plaintiff.

Charles M. Phillips, U. S. Atty., by Vincent E. Hull, Asst. U. S. Atty., both of Trenton, N. J., and David A. Turner, Department of Justice, of Washington, D. C., for defendant.

FAKE, District Judge.

The problem for solution here is whether the plaintiff was totally and permanently disabled within the purview of Section 512c of Title 38, U.S.C.A., on July 27, 1937, and thereafter to April 17, 1941; the disability being based solely on plaintiff's loss of eyesight.

It appears that plaintiff sustained serious injury to his eyes by reason of a shell bursting near him in battle on the Metz Front in September, 1918. Thereafter he was taken to divers field hospitals in France and later to hospitals in this country, and a letter was directed to him by the Bureau of War Risk Insurance dated December 11, 1919, which states: "It has been found that your present total disability is founded upon conditions which render it reasonably certain that it will so continue throughout your life." On May 25, 1934, a letter was sent to plaintiff by the Director of Insurance of the Veterans' Administration which says, that upon an examination of the records, "It is found that you are permanently and totally disabled for insurance purposes and therefore the insurance pay-

ments previously authorized to you will continue as heretofore."

In April 1937 plaintiff underwent an examination of his eyes by the Veterans' Administration facility at Bronx, New York, and the examination disclosed that the right eye was practically blind and as to the left eye the government doctor said: "It is felt that he has practically a normal vision with correction in the left eye, that is our estimate of what we thought." This seems to be the strongest testimony of medical men bearing on the sight of the left eye and at its best it is lacking in certainty. Plaintiff claimed he had but slight vision at that time.

In 1941 plaintiff was put under surveillance by the Veterans' Administration and later by the Federal Bureau of Investigation, and it was found that he was doing things which usually cannot be done by persons who are totally blind, such as walking several blocks without help and without the use of a cane; going to stores, making purchases; lifting a package to avoid contact with a fire hydrant. He was observed looking at a billboard; looked up at an overcast sky; looking at his auto engine; looking at a race sheet; passing up the aisle of a theatre to show a piano on the stage without touching the seats as he passed; helped his wife in janitor service at a theatre and other like conduct. Some of these things might have been done by a well trained man of no vision whatever. A careful study of the testimony bearing on these factors leaves a feeling of uncertainty as to just how much sight plaintiff enjoyed, and in this connection I resort to plaintiff's testimony. He is entitled to credence and he says he has at all times been practically blind since the battle of Metz. It must be remembered that it is not claimed here that plaintiff's sight was at all times completely obliterated. At times he has had flashes of dim sight of more or less duration. He says so himself and a careful study of the medical testimony leads me to the conclusion that the suspicious things introduced in evidence are explained as the result of recurrent flashes of sight wholly beyond plaintiff's control and of no permanent practical use to him. I therefore have arrived at the further conclusion that such fluctuating and uncertain recurrences of sight are not sufficient to find that plaintiff is in any substantial degree in possession of normal eyesight.

I find that plaintiff is so far incapacitated in the loss of his eyesight, sustained in battle, that he is incapacitated to follow continuously any substantially gainful occupation and that has been his condition from the date of his injury down to the date of the institution of this suit.

Moreover, an examination before me in my chambers by the government doctor, Ballou, disclosed that plaintiff is now positively blind in the strictest sense of the word by reason of cataracts on both eyes.

This action having been tried by the Court, without a jury, the Court hereby makes the following findings of fact and conclusions of law:

### Findings of Fact.

First: That while the plaintiff, James Vincent Sheridan was serving in the United States Army during World War I, there was issued to him by the Bureau of War Risk Insurance of the Treasury Department a contract of yearly renewable term insurance in the principal sum of $5,000, effective February 2, 1918, which provides for the payment of monthly installments of $28.75 in the event of the total and permanent disability of the said plaintiff.

Second: On December 11, 1919, the Bureau of War Risk Insurance, as the result of its finding that plaintiff was totally and permanently disabled, made an award to the plaintiff of insurance benefits in monthly installments of $28.75 from the 28th day of November, 1918.

Third: Pursuant to the said award made by the Government, insurance payments of $28.75 per month were made by the Government to the plaintiff from November 28, 1918, up to and including July 27, 1937.

Fourth: The said monthly payments of $28.75 were terminated as of July 27, 1937, by reason of a decision rendered by the Insurance Claims Council of the Veterans Administration on July 8, 1937, to the effect that loss of vision in both eyes had not been established by a recent examination and that plaintiff had recovered the ability to follow continuously a substantially gainful occupation. That the said decision of the Insurance Claims Council was affirmed by the Board of Veterans' Appeals on April 17, 1941, such affirmation constituting final administrative denial of the plaintiff's claim.

Fifth: That after the discontinuance of the said benefit payments on July 27, 1937,

plaintiff converted his yearly renewable term insurance to a policy or contract of United States Government (converted) life insurance, in the amount of $450, and paid premiums on the said converted policy at the rate of $0.45 per month from July, 1939, to and including at least the month of May, 1943.

Sixth: That the plaintiff was honorably discharged from the military service on November 27, 1918, and since such discharge has not pursued or engaged in any substantially gainful occupation and has received no compensation or remuneration for any work done or services performed by him.

Seventh: That on July 27, 1937, the date of the termination of monthly benefits to him by the Government, the plaintiff was totally and permanently disabled within the meaning of his aforesaid contract of yearly renewable term insurance.

Eighth: That on April 17, 1941, the date of the final administrative denial of the plaintiff's claim by the Government, the plaintiff was totally and permanently disabled within the meaning of his aforesaid contract of yearly renewable term insurance.

Ninth: That the totality and permanency of the plaintiff's disability have continued down to the time of the trial herein.

### Conclusions of Law.

First: That the plaintiff is entitled to recover judgment in this action against the defendant under the contract of war risk yearly renewable term insurance which was issued to him by the Government for monthly payments of $28.75 each from July 28, 1937, to and including the date of the entry of judgment in this suit, and the contract of insurance shall be and is hereby reinstated.

Second: That the plaintiff is entitled to recover judgment in this action against the defendant for all premiums which he has paid to the Government on the policy of United States Government (converted) life insurance in the amount of $450, viz.: At the rate of $0.45 per month from July, 1939, to and including the date of the entry of judgment herein and the said converted policy in the amount of $450 is cancelled.

Third: That the plaintiff is entitled to recover judgment in this action against the defendant for attorneys' fees which the Court does hereby fix at 10 per cent of the amount to be recovered by the plaintiff for benefits and the return of premiums, pursuant to the foregoing first and second conclusions of law, which said fees shall be paid by the Government to the plaintiff's attorneys.

Fourth: That judgment shall be entered in favor of the plaintiff and against the defendant in accordance with the foregoing findings of fact and conclusions of law.